IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CRAIG BENTON DANIELS,
      Petitioner,

vs.                                Case No.:  3:13cv149/MCR/EMT

MICHAEL D. CREWS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed a motion to dismiss, on the ground that Petitioner's claims are unexhausted and procedurally barred (doc. 30).  Respondent also submitted relevant portions of the state court record (doc. 32).  Petitioner filed a reply (doc. 34).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 32).[1]  Petitioner was charged in the Circuit Court in and for Walton County, Florida, Case No. 2000-CF-156, with one count of robbery with a firearm (Count 1), and one count

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted by Respondent (doc. 32). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

of aggravated battery with a firearm (Count 2) (Ex. 2).  Petitioner entered a written plea agreement in Case No. 2000-CF-156 (and Case No. 2000-CF-369[2]), pursuant to which he agreed to plead nolo contendere to a reduced charge of aggravated assault with a firearm on Count 1, and the State agreed to dismiss Count 2 (Ex. 3).  The parties additionally agreed that Petitioner would be sentenced to eighty-four (84) months of incarceration, with a three-year mandatory minimum (*id.*).  The judgment was rendered on September 5, 2000, adjudicating Petitioner guilty and sentencing him in accordance with the plea agreement (Ex. 4).  Petitioner successfully challenged his sentence (*see* Ex. 5), and on December 18, 2003, he was resentenced to 82.3 months of imprisonment, with credit for all prison time previously served (47 months) and with the provision that "[a]ny portion of the sentence not served shall be suspended and that balance shall be converted to probation." (Ex. 6).  The order of probation, rendered December 31, 2003, placed Petitioner on probation for a period of 35.3 months, with a suspended sentence of 35.3 months in state prison (Ex. 7; *see also* Ex. 9).  On August 6, 2004, an Affidavit for Violation of Probation ("VOP") was filed (Ex. 8).  The affidavit alleged Petitioner committed new law violations, specifically, armed robbery with a deadly weapon (*id.*).

On November 15, 2004, Petitioner was charged in Case No. 2004-CF-1044 with one count of robbery with a firearm (Count 1), one count of grand theft (Count 2), and one count of burglary of a conveyance (an automobile) armed with a dangerous weapon (a handgun) (Count 3 (Ex. 11).  A jury found Petitioner guilty of robbery with a firearm and burglary of a conveyance armed with a dangerous weapon, as charged (Exs. 12, 13).  The trial court granted a judgment of acquittal on the grand theft count (Ex. 12 at 120).  In a judgment and sentence rendered May 19, 2005, the court sentenced Petitioner, as a habitual felony offender, to consecutive terms of life imprisonment on the robbery and burglary counts, with 685 days of jail credit, and a term of 35.3 months of imprisonment in the VOP case, to run concurrently with the first life sentence (Exs. 14, 15, 17).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D05-2596 (Ex. 18).  He also filed a motion to correct sentencing error, pursuant to Rule 3.800(b)(2), in the circuit court (Ex. 19).  The circuit court granted the Rule 3.800(b) motion, and resentenced Petitioner to concurrent sentences on all counts (Exs. 21, 22, 23).  The parties filed briefs in the direct appeal (Exs. 24, 25).  The First DCA affirmed the judgment per curiam without written

_____

[2] The judgment in Case No. 2000-CF-369 is not the subject of this habeas action (*see* doc. 1).

opinion on June 15, 2007, with the mandate issuing July 3, 2007 (Ex. 26).  <u>Daniels v. State</u>, 959 So.
2d 256 (Fla. 1st DCA 2007) (Table).

On November 1, 2007, Petitioner filed a habeas petition in the Supreme Court of Florida, Case
No. SC07-2106 (Ex. 27).  He subsequently filed a notice of voluntary dismissal, and the court
dismissed the petition on December 12, 2007 (Exs. 28, 29).  <u>Daniels v. State</u>, 973 So. 2d 1120 (Fla.
2007) (Table).

On November 21, 2007, Petitioner filed a motion to correct illegal sentence, pursuant to Rule
3.800(a) of the Florida Rules of Criminal Procedure (Ex. 30).  In an order rendered November 30,
2007, the state circuit court denied the motion without prejudice to Petitioner's filing an amended
motion within thirty days (Ex. 31).  Petitioner filed an amended motion by the deadline (Ex. 32).  In
an order rendered July 15, 2008, the court struck the motion without prejudice to Petitioner's asserting
his claim(s) in a Rule 3.850 motion (Ex. 33).

On February 6, 2008, Petitioner filed a motion for post-conviction relief, pursuant to Rule
3.850 of the Florida Rules of Criminal Procedure (Ex. 34).  In an order rendered February 27, 2008,
the court struck the motion as facially insufficient, with leave to file an amended motion within twenty
(20) days (Ex. 35).  The court advised Petitioner that failure to comply with the order may result in
the denial of his Rule 3.850 motion with prejudice (*id.*).  The court additionally advised Petitioner
that if he chose not to file an amended Rule 3.850 motion, he had thirty (30) days from the date of
rendition of the order to file a notice of appeal (*id.*).  Petitioner filed a notice of appeal in the First
DCA, Case No. 1D08-1191 (Ex. 36).  The First DCA dismissed the appeal on March 28, 2008 (*id.*).
On March 19, 2008, Petitioner filed an amended Rule 3.850 motion (Ex. 37).  In an order rendered
June 18, 2008, the court struck the motion as facially insufficient, without prejudice to Petitioner's
filing a second amended motion on or before October 31, 2008 (Ex. 41).  Petitioner filed a second
amended motion by the deadline, and he subsequently filed a third amended motion (Exs. 42, 43).  The
State filed a response (Ex. 51).  Petitioner then filed a motion to voluntarily dismiss his Rule 3.850
motion without prejudice (Ex. 54).  Two months later, he filed a fourth amended Rule 3.850 motion
(Ex. 55).  The state circuit court denied Petitioner's motion to dismiss, denied the fourth amended Rule
3.850 motion as unauthorized and an abuse of the Rule 3.850 procedures, and denied the third
amended Rule 3.850 motion on the merits (Ex. 56).  Petitioner appealed the decision to the First DCA,

Case No. 1D11-969 (Exs. 59, 60).  The First DCA affirmed the judgment with a written opinion on June 28, 2011 (Ex. 62).  Daniels v. State, 66 So. 3d 328 (Fla. 1st DCA 2011).  The mandate issued August 22, 2011 (Ex. 62).  Petitioner sought review of the decision in the Supreme Court of Florida, Case No. SC11-1646 (Exs. 64–70).  On November 8, 2012, the state supreme court discharged jurisdiction and dismissed the proceeding (Ex. 73).  Daniels v. State, 103 So. 3d 133 (Fla. 2012) (Mem).

While the Rule 3.850 motion was pending, Petitioner filed a habeas petition in the state circuit court (Ex. 38).  The circuit court dismissed the habeas petition in an order rendered June 10, 2008 (Ex. 40).

Additionally, Petitioner filed a habeas petition in the First DCA, Case No. 1D08-5413, alleging ineffective assistance of appellate counsel (Ex. 74).  The First DCA denied the petition on November 20, 2008, and denied Petitioner's motion for rehearing on January 6, 2009 (Ex. 75). Daniels v. State, 997 So. 2d 438 (Fla. 1st DCA 2008) (Mem).

On September 26, 2011, Petitioner filed another Rule 3.850 motion (Ex. 77).  On February 2, 2012, the circuit court struck the motion as facially insufficient, with leave to file an amended motion within forty-five (45) days (Ex. 86).  Petitioner appealed the decision to the First DCA, Case No. 1D12-1194 (Ex. 91).  The First DCA dismissed the appeal on June 28, 2012, with the mandate issuing July 24, 2012 (Ex. 95).  Daniels v. State, 90 So. 3d 996 (Fla. 1st DCA 2012) (Mem).

On September 5, 2012, Petitioner filed an amended Rule 3.850 motion (Ex. 96).  The circuit court denied the motion as untimely (Ex. 101).  Petitioner appealed the decision to the First DCA, Case No. 1D12-6004 (Ex. 102).  The First DCA affirmed per curiam without written opinion on February 18, 2013, with the mandate issuing April 12, 2013 (Ex. 103).  Daniels v. State, 109 So. 3d 784 (Fla. 1st DCA 2013) (Table).

On December 14, 2012, Petitioner filed another Rule 3.800(a) motion to correct illegal sentence (Ex. 105).  The state circuit court denied the motion on March 21, 2013 (Ex. 106).

Petitioner filed the instant federal habeas action on April 1, 2013 (doc. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody is in violation of the Constitution or laws . . . of the United States." It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
            (A)  the applicant has exhausted the remedies available in the courts of the State; or
            (B) (i)  there is an absence of available State corrective process; or
                (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist,

an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id.

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

Ground One:  "Petitioner was denied his Sixth and Fourteenth Amendment (to the United States Constitution) rights to the effective assistance of counsel, and the state court's resolution of Petitioner's Ineffective Assistance of Counsel claims was contrary to, or an unreasonable application of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); and/or Unites States v. Cronic, 466 U.S. 648 (1984)."

Petitioner alleges his trial counsel failed to conduct any pre-trial investigation (doc. 1 at 10–16).  He alleges counsel did not interview or depose any of the State's witnesses (although he admits counsel attended the deposition of the victim, and he admits the victim's testimony was the only evidence that linked him to the crimes).  Petitioner additionally alleges counsel failed to object to Investigator Grantham's testimony that the video recording of the robbery showed two suspects (id.). He argues counsel should have objected on the ground that the testimony was not supported by the still photographs produced from the video recording, which were admitted into evidence at trial (id.).  He alleges counsel should have reviewed and preserved the video recording (id.).  He alleges counsel also failed to contact his alibi witness, Ms. Johnson (id.).  Petitioner asserts counsel failed to present evidence that three others were involved in the crime (id.).  He alleges his trial would have resulted in an acquittal if defense counsel had properly investigated the case, made proper trial objections, and

presented testimony from his alibi witness (*id.*).  Petitioner additionally  alleges counsel was ineffective for failing to move for a judgment of acquittal ("JOA") on the robbery and burglary charges, on the ground that there was no competent evidence of the monetary value of the stolen bank deposit (although Petitioner acknowledges that counsel successfully argued a motion for JOA on the grand theft charge) (*id.*).  Petitioner states he raised all of these ineffective assistance of counsel claims in his Rule 3.850 motion (*id.* at 16).

Respondent contends Petitioner failed to properly present his claims to the First DCA on appeal from the circuit court's denial of post-conviction relief (doc. 30 at 19–39).  Therefore, the claims are unexhausted and procedurally defaulted in the state courts, and thus procedurally barred from federal review (*id.*).

In Petitioner's reply, he argues that Florida's appellate rules provide that briefing is not required in order to obtain review of claims summarily denied in a Rule 3.850 proceeding (doc. 34 at 6–7).  He contends that because he could obtain appellate review of the merits of his underlying claims without briefing, he chose to argue only the issue of whether the court erred in failing to rule on his motion to dismiss prior to summarily denying his Rule 3.850 motion (*id.*).

The state court record demonstrates Petitioner raised the ineffective assistance of counsel claims asserted in Ground One in his third amended Rule 3.850 motion (Ex. 43).  The state circuit court summarily denied the claims (Ex. 56).  Petitioner appealed the decision to the First DCA and chose to file an appellate brief (Ex. 60).  He argued one issue in his initial brief:

> Trial Court erred in failing to rule on timely Motion to Dismiss Rule 3.850 Motion prior to this ruling on Motion for Postconviction Relief.

(Ex. 60).  He argued the lower court abused its discretion by summarily denying his (third) amended Rule 3.850 motion without first ruling on his motion to voluntarily dismiss (*id.*).  He argued the court was required to grant the motion to dismiss, accept his (fourth) amended Rule 3.850 motion, and rule on that motion (*id.*).  Petitioner did not argue error with respect to the lower court's substantive denial of his ineffective assistance of counsel claims (*id.*).  The First DCA affirmed the circuit court's decision with the following written opinion:

> Craig B. Daniels appeals a circuit court order denying his third and fourth amended motions for postconviction relief under Florida Rule of Criminal Procedure 3.850.  The order also denied his motion to voluntarily dismiss the third amended postconviction motion without prejudice.  Daniels argues the court erred in denying

the third amended postconviction motion without first ruling upon the motion to dismiss.  He claims the court was obligated to grant the motion to dismiss without prejudice, as he brought the motion before the trial court ruled on the underlying postconviction claims and the State would suffer no prejudice by a dismissal.  We disagree.

Defendant supports his argument with caselaw which preceded the Supreme Court's decision in Spera v. State, 971 So. 2d 754 (Fla. 2007).  Prior to Spera, cases consistently held that the trial court was required to grant a defendant's motion to dismiss a postconviction claim without prejudice, so long as it was filed before the court ruled on the underlying claim and dismissal would not cause prejudice to the State.  See Hutchinson v. State, 921 So. 2d 780, 781 (Fla. 1st DCA 2006); Hansen v. State, 816 So. 2d 808, 809 (Fla. 1st DCA 2002); see also Clark v. State, 491 So. 2d 545, 546 (Fla. 1986); Carvalleria v. State, 675 So. 2d 251 (Fla. 3d DCA 1996); Washington v. State, 937 So. 2d 271, 272 (Fla. 4th DCA 2006).

However, the process for evaluating postconviction motions changed with Spera.  Spera held that when a trial court summarily denies a defendant's motion for postconviction relief for failure to meet pleading requirements, it must give the defendant the opportunity to amend the motion.  See Spera, 971 So. 2d at 761; see also Wilson v. State, 13 So. 3d 83, 85 (Fla. 2d DCA 2009); Watson v. State, 975 So. 2d 572, 573 (Fla. 1st DCA 2008).  This does not mean postconviction defendants have unlimited opportunities to amend a facially insufficient motion.  Spera requires only that courts give defendants one opportunity to amend.  See Oquendo v. State, 2 So. 3d 1001, 1006 (Fla. 4th DCA 2008); Prevost v. State, 972 So. 2d 274, 275 (Fla. 1st DCA 2008).  After this one opportunity is given, courts are not required to give additional chances.  See Nelson v. State, 977 So. 2d 710, 711 (Fla. 1st DCA 2008) (stating "[a]lthough a trial court in its discretion may grant more than one opportunity to amend an insufficient claim, Spera does not mandate repeated opportunities").

In light of Spera, it seems there are certain circumstances where a trial court is still required to grant a postconviction defendant's motion to dismiss without prejudice, and certain circumstances where it can exercise discretion regarding such motions.  For example, if a defendant moves to dismiss a postconviction motion without prejudice before a trial court has issued a ruling—meaning before the court has evaluated the underlying motion for legal sufficiency—the motion should be granted, so long as it is not prejudicial to the State.  This aligns with the pre-Spera cases stating a trial court should grant a defendant's motion to dismiss without prejudice unless it has ruled upon the underlying postconviction claims.

However, the situation changes once the defendant is given the opportunity to amend.  Spera requires only one opportunity to amend.  Therefore, if the defendant has already had that chance, a court should not be obligated to extend yet another opportunity by granting a subsequent motion to dismiss without prejudice. Otherwise,

a defendant could attempt to circumvent <u>Spera</u> by following each amended postconviction motion with a motion to dismiss without prejudice, thereby prolonging the postconviction process.

    In short, when a postconviction defendant moves to dismiss his motion without prejudice, the trial court must determine whether a previous order gave the defendant an opportunity to amend pursuant to <u>Spera</u>. If no such order was issued, the motion to dismiss should be granted unless it will cause prejudice to the State. However, if such an order was issued, the disposition of the motion to dismiss should be left to the trial court's discretion and the court is not required to grant it.[FN 1]

> [FN 1: This reasoning is consistent with how we have treated motions to dismiss postconviction claims following <u>Spera</u>. Since then, the only case from this District dealing with a motion to voluntarily dismiss a postconviction claim has been <u>Davis v. State</u>, 28 So. 3d 168 (Fla. 1st DCA 2010). <u>Davis</u> does not indicate whether the defendant was given an opportunity to amend under <u>Spera</u>. It states only that the defendant filed a motion for voluntary dismissal prior to the denial of his postconviction motion on the merits. *Id.* at 169. Under such circumstances, the motion to dismiss should have been granted without prejudice, which is what this Court found. *Id.*]

    Turning to the instant case, the trial court gave Daniels at least two opportunities to amend his postconviction motion under <u>Spera</u> before he brought the instant motion to dismiss without prejudice. In orders dated February 27, 2008, and June 18, 2008, the trial court gave Daniels the chance to address the facial deficiencies in his postconviction motion. Daniels, in turn, amended his postconviction claims several times; in fact, the instant motion to dismiss concerns the third amended postconviction motion and indicates Daniels' intent to file a fourth amended motion.

    Since the trial court gave Daniels ample opportunity to amend his postconviction claim, it was not obligated to grant the motion to dismiss without prejudice. It properly determined that to do so would be an abuse of the postconviction process. This determination is AFFIRMED.

<u>Daniels v. State</u>, 66 So. 3d 328, 329–30 (Fla. 1st DCA 2011).

As previously discussed, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan</u>, 526 U. S. at 845. Although Petitioner was not required to file an initial brief from the summary denial of his Rule 3.850 motion, *see* Fla. R. App. P. 9.141(b)(2), he chose to do so. The First DCA, the state court in which Petitioner filed his post-

conviction appeal, requires an appellant who files a brief when appealing a summarily denied post-conviction motion, to address all arguments in his brief that he wishes to preserve for appellate review. *See* <u>Watson v. State</u>, 975 So. 2d 572, 573 (Fla. 1st DCA 2008)[6]; *see also* <u>Cook v. State</u>, 638 So. 2d 134, 135 (Fla. 1st DCA 1994).[7]  Petitioner's initial brief in his post-conviction appeal was filed March 8, 2011, well after <u>Watson</u> was decided and after the law of the Fifth DCA changed with the <u>Ward</u> decision.  Because he chose to file a brief, he was required to raise and fully address the merits of all issues for which he sought appellate review, in order to obtain appellate review of the ineffective assistance of counsel claims raised in his summarily denied Rule 3.850 motion.  *See* <u>Watson</u>, 975 So. 2d at 573.  *Cf.* <u>Daniels v. Sec'y, Dep't of Corr.</u>, No. 6:10cv200-ACC-KRS, 2010 WL 5297167, at *7 (M.D. Fla. Dec. 20, 2010) (recognizing that <u>Webb</u> was receded from in <u>Ward</u>, but holding that <u>Webb</u> was applicable to federal petitioner's claim, because his state post-conviction appeal pre-dated <u>Ward</u>).  In Petitioner's appellate brief, he did not raise a substantive argument as to the circuit court's rejection of his ineffective assistance of counsel claims.  Petitioner's having chosen to seek appellate review of only the procedural issue of whether the lower court was required to grant his motion to dismiss and consider the claims raised in his fourth amended Rule 3.850 motion, and not the substance of the lower court's denial of his ineffective assistance of counsel claims, Petitioner failed to sufficiently present them for appellate review and thus failed to invoke the state court's established appellate review process as to those claims.  Therefore, the claims are unexhausted for federal habeas purposes.  *See, e.g.,* <u>Coleson v. Crews</u>, No. 3:12cv96/MCR/EMT, 2013 WL 1197729, at *35 (N.D. Fla. Feb. 4, 2013) (unpublished); *Report and Recommendation Adopted by* 2013 WL 1197764 (N.D. Fla. Mar. 25, 2013) (unpublished);  <u>Solis v. Tucker</u>, No. 4:10cv3/SPM/CAS, 2012 WL 4478301, at *5 (N.D. Fla. Aug. 29, 2012) (unpublished), *Report and Recommendation Adopted*

---

[6] If an appellant chooses not to file a brief when appealing, the appellate court is required to investigate all possible means of relief.  <u>Watson</u>, 975 So. 2d at 573 n.1; *see also* Fla. R. App. P. 9.141(b)(2).

[7] The Eleventh Circuit held, albeit in an unpublished opinion, that when a Florida defendant does not receive an evidentiary hearing in his Rule 3.850 proceeding and appeals the circuit court's decision denying his motion, he satisfies the federal exhaustion requirement as to <u>all</u> claims raised in his Rule 3.850 motion, even if he files a brief and fails to address each issue in his appellate brief.  *See* <u>Darity v. Sec'y, Dep't of Corr.</u>, 244 F. App'x 982, 984 (11th Cir. 2007) (unpublished) (emphasis added); *see also* <u>Cortes v. Gladish</u>, 216 F. App'x 897, 899–900 (11th Cir. 2007) (unpublished).  However, the Florida case upon which the Eleventh Circuit relied in <u>Darity</u> and <u>Cortes</u>, that is, <u>Webb v. State</u>, 757 So. 2d 608 (Fla. 5th DCA 2000), is no longer the decisional law of the Fifth DCA.  *See* <u>Ward v. State</u>, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (en banc).

*by* 2012 WL 4478782 (N.D. Fla. Sept. 28, 2012) (unpublished); Thompson v. Tucker, No. 5:10cv186/MCR/EMT, 2012 WL 2891272, at *9 (N.D. Fla. June 12, 2012) (unpublished), *Report and Recommendation Adopted by* 2012 WL 2890802 (N.D. Fla. July 16, 2012) (unpublished); Wood v. Tucker, No. 5:10cv200/RS/EMT, 2012 WL 2511428, at *7–8 (N.D. Fla. May 31, 2012) (unpublished), *Report and Recommendation Adopted by* 2012 WL 2511323 (N.D. Fla. June 29, 2012) (unpublished); Green v. McNeil, No. 1:09cv204/MMP/GRJ, 2011 WL 2790167, at *7 (N.D. Fla. June 22, 2011) (unpublished), *Report and Recommendation Adopted by* 2011 WL 2790180 (N.D. Fla. July 15, 2011) (unpublished).

Any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, because a second appeal is unavailable, and any further attempt to raise the claims in another Rule 3.850 motion would be subject to dismissal as successive. *See* Fla. R. Crim. P. 3.850(f). Therefore, the claims raised in Ground One are procedurally defaulted.

As discussed *supra*, to overcome a procedural default such that this court may consider the merits of his claims, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. Petitioner has not alleged cause for his default; nor has he shown he is entitled to review of his claims through the "fundamental miscarriage of justice" exception to the procedural bar, because he has not alleged the existence of new reliable evidence in light of which it is more likely than not no reasonable juror would have convicted him. Therefore, Ground One is procedurally barred from federal review.

Ground Two: "Petitioner was denied his Sixth and Fourteenth Amendment (to the United States Constitution) rights to the effective assistance of Counsel, due process of law, and a fair trial, where defense counsel was intoxicated and addicted to illegal drugs during Petitioner's trial, causing a "structural defect," and the State Court's resolution of this claim was contrary to, or an unreasonable application of *Arizona v. Fulminante*, 499 U.S. 279 (1991); and/or *Coleman v. Thompson*, 501 U.S. 722 (1991); and/or *Murray v. Carrier*, 477 U.S. 478 (1986)."

Petitioner alleges in March of 2011, his friend conducted an internet search of Petitioner's trial counsel, and discovered that counsel pled no contest to trafficking in hydrocodone and admitted his addition to the drug (doc. 1 at 16–18). Petitioner alleges he inquired of The Florida Bar regarding counsel's disciplinary record, but he received little information in response (*id.*). Petitioner alleges his trial counsel "obviously" was addicted to and used illegal drugs during his trial in 2005 (*id.*). He alleges his appellate counsel noted that many trial errors were unpreserved by trial counsel (*id.*).

Petitioner acknowledges that the state post-conviction court determined this claim was untimely; however, he asserts he could not have learned of his trial counsel's drug use sooner, because he had no access to the internet (*id.*).  He additionally contends the state court failed to consider his argument that counsel's drug use constituted a "structural defect" and led to a "miscarriage of justice" (*id.*).

Respondent contends the state court rejected Petitioner's ineffective assistance of counsel claim on an independent and adequate state procedural bar, namely, the time bar set forth in Rule 3.850(b)(1) (doc. 30 at 40–51).  Therefore, the claim is unexhausted (*id.*).  Respondent further contends Petitioner may not now return to state court to exhaust this claim, because a second Rule 3.850 motion would be subject to dismissal as successive, pursuant to Rule 3.850(f) (*id.*).  Therefore, the claim is procedurally barred from federal review (*id.*).

In Petitioner's reply, he asserts the state court's untimeliness determination was arbitrary, because he demonstrated that he could not have learned of his trial counsel's drug use until 2011, when his friend discovered counsel's conviction on the internet (doc. 34 at 7–11).  He additionally alleges the State failed to disclose counsel's arrest on July 1, 2008, and counsel's suspension from the Bar in September of 2009 (years after Petitioner's 2005 trial) (*id.*).

The state court record demonstrates that in Petitioner's amended Rule 3.850 motion filed September 5, 2012, he raised one claim, that in 2011, he obtained "newly discovered evidence" that defense counsel was taking illegally obtained pain killers (doc. 96).  Petitioner argued that counsel's alleged ineffectiveness during Petitioner's 2005 trial was attributable to counsel's drug use (*id.*).  Although Petitioner cited <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), he did not allege any facts suggesting the State was aware of counsel's alleged drug use during the trial proceedings (*id.*).[8]  The state court disposed of the motion as follows:

## II) THE DEFENDANT'S AMENDED MOTION IS FILED UNTIMELY

> In the instant amended motion, the defendant appears to raise a postconviction claim based on "newly discovered" facts.[FN 14]  If a defendant's initial two-year filing window has expired, he may file an otherwise untimely motion for postconviction relief under the "newly discovered" facts exception.  Fla. R. Crim. P.

---

[8] In <u>Brady</u>, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

3.850(b)(1).  When a defendant's motion fails to meet the pleading requirements for a "newly discovered" facts claim, a trial court should grant at least one opportunity to amend the insufficient motion.  Neal v. State, 984 So. 2d 1276, 1277 (Fla. 4th DCA 2008) (citation omitted); Spera v. State, 971 So. 2d 754, 761 (Fla. 2007) (holding that a court should strike a defendant's insufficient initial rule 3.850 motion and grant him leave to amend within a reasonable time, such as thirty days).  However, if a defendant fails to file his amended postconviction motion within the time directed by the court, his motion may be denied on the merits.  Jones v. State, 88 So. 3d 998, 998 (Fla. 2d DCA 2012) (citations omitted) (stating that ". . . if a defendant fails to amend a facially insufficient motion within the time directed by the postconviction court, the postconviction court shall enter a final order denying the motion on the merits").

In the instant case, the defendant filed a motion for postconviction relief with this Court in September 2011 in which he raised a claim based on the "newly discovered" facts exception.[FN 15]  By prior Order filed on January 7, 2012, the Court struck the defendant's September 2011 motion as facially insufficient and granted him leave to amend within forty-five days pursuant to Spera.  As a result, the defendant had until approximately the end of March 2012 to file his amended postconviction motion.  Instead of filing an amended motion within the time allowed, the defendant filed a notice of appeal.[FN 17]  The appellate court dismissed the defendant's appeal because the defendant appealed a non-final order.[FN 18]  The record indicates that the defendant did not file the instant amended postconviction motion until September 2012, which is after the forty-five day deadline that expired in March 2012.  Therefore, the instant amended motion is properly denied with prejudice.

> [FN 18:  Mandate & Op., July 24, 2012 (Attach. 15).  The appellate court did not grant the defendant any additional time in which to file his amended rule 3.850(b)(1) motion.  Id.  The Court notes that the order striking the defendant's initial rule 3.850(b)(1) motion directed that such an order was not an appealable order.  Attach 13.]

## III) THE DEFENDANT'S AMENDED MOTION DOES NOT STATE A FACIALLY SUFFICIENT CLAIM UNDER THE "NEWLY DISCOVERED" FACTS EXCEPTION

Even if the defendant had filed the instant amended motion within the time allowed by the Court, he does not demonstrate a facially sufficient claim under rule 3.850(b)(1).  To qualify as "newly discovered," the alleged facts "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known of them by the use of diligence."  Fla. R. Crim. P. 3.850(b)(1); Jones v. State, 591 So. 2d 911, 912 (Fla. 1992) (quoting Hallman v. State, 371 So. 2d 482, 485 (Fla. 1979)).  However, a defendant must raise his claim within "two years of the time the new facts were or

could have been discovered with the exercise of diligence." Fla. R. Crim. P. 3.850(b)(1). If the alleged "newly discovered" facts were unknown at trial, the facts will not qualify as "newly discovered" if the defendant could have obtained the facts through the exercise of diligence. See Jones, 591 So. 2d at 916. Even if the evidence qualifies as "newly discovered" facts, the evidence must also be of a nature that it would probably produce an acquittal on retrial. Marek v. State, 14 So. 3d 985, 990 (Fla. 2009). Even if the defendant relies on "newly discovered" facts as the basis for anther claim, such as a Brady violation, he must state a facially sufficient "newly discovered" facts claim. See Reid v. State, 745 So. 2d 363, 364 (Fla. 4th DCA 1999); Polk v. State, 906 So. 2d 1212, 1215 (Fla. 1st DCA 2005).

In the instant amended motion, the defendant appears to rely on "newly discovered" facts regarding his trial counsel to support his alleged Brady and ineffective assistance of counsel claims.[FN 20] However, the defendant does not allege a facially sufficient claim under the "newly discovered" facts exception. Although the defendant appears to provide additional allegations in his ineffective assistance of counsel claims,[FN 21] his "newly discovered" facts claim is facially insufficient. For example, the defendant states that he "received the information on his former defense counsel from the Florida Bar on or about March 15, 20111 (sic)." [FN 22] The defendant does not explain why he could not have learned of the information sooner through diligence. Such an explanation is important because some of the allegations in the instant amended motion and exhibits indicate that the "newly discovered" facts were available more than two years before the defendant filed his rule 3.850(b)(1) motion.[FN 23] Consequently, the defendant's amended motion continues to be facially insufficient and is properly denied with prejudice.[FN 24]

[FN 24: See Nelson v. State, 977 So. 2d 710, 711 (Fla. 1st DCA 2008).]

(Ex. 101) (footnotes 14–17, 19–23 omitted). Petitioner appealed the decision to the First DCA (Ex. 102). The First DCA affirmed the decision without written opinion (Ex. 103).

As previously discussed, this court will consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman, 501 U.S. at 734–35 & n.1; Caniff, 269 at 1247; Chambers, 150 F.3d at 1326–27. This court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert, 455 F.3d at 1271, that is, not applied in an "arbitrary or unprecedented fashion," Judd, 250 F.3d at 1313, or in a manifestly unfair manner. Ford, 498 U.S. at 424–25; Upshaw, 70 F.3d at 579.

Rule 3.850(b) provides, in relevant part:

> **(b) Time Limitations.** A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final unless it alleges that
>
> (1) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, and the claim is made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence, . . .

Fla. R. Crim. P. 3.850(b)(1).

In Petitioner's case, the judgment and sentence became final under Florida law on July 3, 2007, upon issuance of the First DCA's mandate on direct appeal (Ex. 17). *See* Breland v. State, 58 So. 3d 326 (Fla. 1st DCA 2011) (two-year period in Rule 3.850(b) does not commence until both the conviction and the sentence become final, which occurs upon issuance of the mandate in the direct review proceedings) (citing Cook v. State, 596 So. 2d 483, 484 (Fla. 1st DCA 1992)). He had two years from July 3, 2007, or until July 3, 2009, to file a timely Rule 3.850 motion, unless he sufficiently alleged that one of the three exceptions applied. *See* Fla. R. Crim. P. 3.850(b). The state court determined that Petitioner's allegations did not satisfy any of the exceptions set forth in Rule 3.850(b), and this federal court must defer to that determination. Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005)( "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *see also* Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983). In dismissing the Rule 3.850 motion, filed September 5, 2012, the state court did not apply Rule 3.850(b)(1) in an arbitrary, unprecedented, or manifestly unfair manner. Therefore, Ground Two is procedurally barred from federal review.

Petitioner failed to show cause for his failure to raise Ground Two within the two-year window that expired on July 3, 2009. Petitioner states he did not become aware of trial counsel's drug conviction until 2011, when a friend discovered the conviction on the internet. However, information regarding the conviction, which occurred on May 29, 2009 (*see* Ex. 77 at 37–38), was publically available prior to July 3, 2009 (*see id.* at 41, 42). Further, information regarding counsel's arrest on the drug charge (on July 21, 2008) was published in the local newspaper on July 30, 2008;

indeed, Petitioner submitted a copy of the article as an exhibit to his Rule 3.850 motion filed September 26, 2011 (Ex. 77).  Petitioner does not allege he made any effort, let alone a diligent effort, to discover, through the same friend or by any other means, the fact of counsel's drug use sooner.[9] Therefore, he has not demonstrated he is entitled to federal review of his claim through the "cause and prejudice" portal.

Even if Petitioner's claim presented a claim of "structural error," as he suggests, the nature of the error does not render it immune from application of a procedural bar on federal habeas. Although structural errors are presumed to be prejudicial and thus not subject to harmless error review, such errors are nevertheless subject to the general rules of waiver, forfeiture, and default. *See* Engle v. Isaac, 456 U.S. 107, 129, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982) ("While the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make that threshold showing. . . . [A]ny prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief."); Hollis v. Davis, 941 F.2d 1471, 1476–83 (11th Cir. 1991) (applying, in a § 2254 proceeding, the "cause and prejudice" test to claims based on structural errors under Vasquez v. Hillery, 474 U.S. 254 (1986)); Hunt v. Houston, 563 F.3d 695, 704 n.2 (8th Cir. 2009) (habeas petitioner's claimed structural error barred by petitioner's procedural default of claim in state court); Thornburg v. Mullin, 422 F.3d 1113, 1141 (10th Cir. 2005) (structural errors are subject to state procedural bars that may result in procedural bar to federal habeas view of claim if state bar is based on adequate and independent ground); Ward v. Hinsley, 377 F.3d 719, 725–26 (7th Cir. 2004) (rejecting argument that "right to a structurally sound trial is one that is not subject to waiver and therefore cannot be subject to procedural default"); Hatcher v. Hopkins, 256 F.3d 761, 764 (8th Cir. 2001) ("[The petitioner argues] that federal courts may review structural errors even though they have been procedurally defaulted in the state courts.  That is incorrect.  The Supreme Court has recently detailed the circumstances necessary to bypass a state-law procedural default in a § 2254 petition, and 'structural error' is not listed among them."); Beazley v. Johnson, 242 F.3d 248, 269–70 (5th Cir.

---

[9] Indeed, publication of trial counsel's arrest occurred prior to Petitioner's filing his third amended Rule 3.850 motion in the first post-conviction proceeding, on October 17, 2008 (Ex. 43).  With due diligence, Petitioner could have discovered the fact of counsel's drug use in time to present it to the state circuit court prior to the court's consideration of the merits of his ineffective assistance of counsel claims.

2001) (rebuffing contention that "claim is not subject to procedural default because it is a <u>structural error</u>" (emphasis in original)); <u>Jones v. Henderson</u>, 809 F.2d 946, 950 (2d Cir. 1987) (applying, in a § 2254 proceeding, the "cause and prejudice" test to a claim based on a structural error under <u>Waller v. Georgia</u>, 467 U.S. 39 (1984)); <u>United States v. Kleinbart</u>, 27 F.3d 586, 590–91 (D.C. Cir. 1994) (applying, in a § 2255 proceeding, the "cause and prejudice" test to a defect claimed by the defendant to be a structural error under <u>Sullivan v. Louisiana</u>, 508 U.S. 275 (1993)).

Finally, Petitioner has not demonstrated he is entitled to federal review of his claim through the "fundamental miscarriage of justice" exception, because he has not alleged the existence of any new reliable evidence of his innocence.  Although in Ground One he references an alibi witness, Ms. Susan Johnson, he has not proffered any reliable evidence of the substance of her testimony, for example, an affidavit.  His speculative assertion that she would have verified that he was living in Colorado at the time of the offenses (*see* doc. 1 at 12) is insufficient to make a colorable showing of actual innocence.  Therefore, Petitioner is not entitled to federal review of Ground Two.

IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Respondent's motion to dismiss (doc. 30) be **GRANTED**.

     2.      That the petition for writ of habeas corpus (doc. 1) be **DISMISSED with prejudice**, because the claims asserted therein are procedurally barred from federal review.

     3.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 8th day of April 2014.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

     Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).